JOHNSON, Judge.
The defendant in this case is the original lessee from the owner of a theater at 1040 Royal Street in New Orleans. The defendant granted a sublease to plaintiff, a corporation in which defendant was a stockholder and officer, and, after about IS months occupancy and operation of the theater by and on behalf of plaintiff, the defendant notified the plaintiff that the contract of sublease was terminated. On September 1, 1968, the defendant arbitrarily took over possession and operation of the theater individually. Plaintiff filed this suit to enjoin the defendant from continuing to occupy and operate the leased premises in derogation of the rights of plaintiff. After trial of the rule to show cause why a preliminary injunction should not issue the Civil District Court for the Parish of Orleans rendered judgment decreeing “That said rule for preliminary writ of injunction be and the same is hereby dismissed.” Plaintiff has appealed.
 In addition to the prayer for the injunction, plaintiff also prays for other relief against defendant including judgment for sums of money, but we are not concerned with those issues now. The rule nisi was made returnable on September 24, 1968. On that date the defendant filed an exception of improper use of summary process, an exception of no cause of action and an answer. Before commencing to take testimony the trial court referred both exceptions to the merits. It is improper to refer an exception of no' cause of action to the merits because that exception must be decided on the pleadings. However, at the end of the trial of the rule, the trial court announced that inasmuch as this trial was only on the rule for a preliminary injunction and not on the merits it was not necessary to pass on the exceptions. The court was correct in that statement insofar as the exception of no cause of action applies to the other issues and this court likewise will not rule on that exception as to other issues, but as the exception relates to the application for writ of preliminary injunction, it is overruled. This proceeding is the summary process referred to in the other exception. In view of the conclusion we have reached that the injunction should issue, the use of summary process is proper. There is no merit in that exception and it is overruled.
The pertinent facts which brought about this controversy between these parties disclosed by the pleadings and testimony are that on January 23, 1963, Frank Ruffino, the owner of the property on which the theater in question is located, and defend *772 ant, Joel Bluestone, entered into a written contract of lease. That lease contains a stipulation that “Lessee is not permitted to rent or sub-let or grant use or possession of the premises to any other party without the written consent of the Lessor, and then only in accordance with the terms of this lease.” The defendant operated the theater individually until June 1, 1967, when he granted the sublease to the plaintiff corporation without first obtaining written consent of lessor. Preparatory to the execution of the contract of sublease the defendant, Robert M. Hartgrove and Don Kay, made the following memorandum of agreement:
“Memorandum of agreement between Robert M. Hartgrove, Joel Bluestone and Don Kay:
“We have this date agreed to the following:
“Upon payment by Robert Hartgrove and Don Kay to Joel Bluestone of $5000.00 ($2,500 each) each of the 3 OK [interlined] parties will share equally in the operation and profits or losses of the Royal Theatre, New Orleans, Louisiana (1040 Royal Street)
“Upon payment of the above sum it is intended a corporation will be formed to operate the named theatre and each of the parties will be equal shareholders. Operating name and policy to be decided by a majority vote of the stockholders.
“It is intended the effective date XXXX of the new operating company to assume the operation of the theatre will be June 1,1967.
“Upon issuance of the corporation charter, and activation of the new operation the terms of this agreement shall have been fulfilled as it applies to each individual named.
“Signed and agreed to this 6th day of May, 1967 in New Orleans, La.
“ /s/ Joel Bluestone ,/s/ Robert M. Hartgrove
Joel Bluestone Robert M. Hartgrove
/s/ Don Kay
Don Kay
5/31/67
“Received the total sum of $5,000.00 from Robert M. Hartgrove and Don Kay which sum shall be returned in the event sublease is not effected & executed by Mrs. Ruffino.
/s/ Joel Bluestone”
The corporation was organized with these three men who signed the above memorandum of May 6, 1967, as the only stockholders. Inasmuch as Bluestone had his residence apartment and office in the theater building, it was agreed that he may continue to occupy the apartment and office personally; that he would operate the theater as manager in the name and for the corporation, and that Don Kay would keep the books, book the films to be shown and handle the advertising. Hartgrove lived in Dal *773 las, Texas, and did not participate actively in the daily management of the business. All receipts from ticket sales were deposited by Bluestone in the bank in a corporation account. This arrangement continued until September 1,1968. On August 21,1968, Bluestone notified plaintiff that he was terminating the sublease as of September 1, 1968, and that he would then take over individual possession and operation of the theater for his own account. He says he did that because he had made a bad deal and did not want to get in any deeper and because the corporation was insolvent and could not make any money. Also another circumstance that prompted him to terminate the sublease arrangement with the plaintiff was that they never were able to obtain the consent of the original lessor to the sublease to plaintiff. Defendant, for that reason, considered the sublease to be wholly invalid and nonexistent.
Defendant’s counsel contends that at the time defendant decided to terminate the sublease and take over the property for himself he offered to return to Hart-grove and Kay the $5,000.00 they had paid to him on May 31, 1967, in accordance with the receipt written at the bottom of the memorandum of May 6, 1967. We do not consider that the notation written by hand below the signatures on that document to be binding on Hartgrove and Kay. The language of that ex parte statement is ambiguous. Just what the provision, “ * * in the event sublease is not effected or executed by Mrs. Ruffino,” means is vague. Mr. Ruffino died and Mrs. Ruffino was then the executrix of the estate and any agreement she might make with reference to the property would, no doubt, require court approval. Her approval of the sublease was requested several times beginning before June 1, 1967, but she refused to give it. During that period of 15 months she took no action to evict plaintiff, except her attorney testified that he did threaten to do so by letter. The courts of this state have held in several cases that the absence of approval by the owner of a sublease under these circumstances does not invalidate the sublease contract between the original lessee and his sublessee unless the owner does something to enforce the prohibition. The provisions in the contract of lease between the owner and the original lessee prohibiting the lessee from subleasing the property without the consent of the owner is solely for the protection and benefit of the owner and if the owner does not take action to enforce it no one else can.
Counsel for defendant contends that the consent of the owner is a condition precedent to a valid sublease and cites Woodman (cited in his brief as Whitman) et al. v. Riviere et al., 159 La. 291, 105 So. 347. The Woodman case is not authority for the position of defendant in this case now before this court. The relief sought in the cited case is the same as the relief sought here. The facts in that case distinguish it. The owner, DeSoto Building Company Ltd., leased the entire ground floor of a building to Riviere et al. The original lease contains the stipulation that the lessee cannot sublet the premises or any part thereof without the written consent of the owner’s agent. Without that consent the lessee sublet half the leased premises to Woodman, the plaintiff in that suit. Later Riviere et al. offered to sublet to Woodman within 10 days the other half of the premises. Woodman accepted the offer and called upon the agent of the owner to prepare the necessary sublease. The transaction was not completed within the 10 days and Riviere et al. withdrew the offer and did not sign the sublease when it was finally prepared with the owner’s consent after the expiration of 10 days. Woodman then filed the suit for the mandatory injunction to order the lessee to sign the sublease. Riviere et al. undoubtedly had the right to withdraw the offer for two reasons: (a) The parties contemplated that the offer and acceptance forming the agreement would be reduced to writing and signed; (b) the sublease *774 was not consummated within the 10 days time specified in the offer. The court in that case did say in effect that the owner’s approval was necessary before the sublease could be executed. Obviously, that holding or conclusion by the court was purely obiter dictum, because the sublessors, the defendants in that case, were entirely within their rights in not signing the sublease for the two reasons noted above.
Judge Regan is the author of a decision of this court rendered this date in the case of LaMarca v. Valenti, 217 So.2d 718 on the same issue. Judge Regan’s discussion in that decision is quite appropriate here and the authorities cited are also controlling in this casé.
The defendant, the original lessee, is attempting to rely on the provisions of his contract with the owner, which provision the original lessor, the owner, alone can invoke. An early case particularly applicable to this issue is Montecon v. Faures, 3 La.Ann. 43, which is cited with approval in Trichel v. Donovan, 138 La. 985, 71 So. 130.
There are cases in which the refusal of the owners have been upheld and the sublease or offers to sublease have been invalidated. It must be noted, however, that in each of such cases the owner is a party to the suit and the court has emphasized that the stipulation in the owner’s lease is for the sole benefit and advantage of the owner, which means that the owner alone can invoke it. Owens v. Oglesby, La.App., 123 So.2d 521; Gamble v. New Orleans Housing Mart, Inc., La.App., 154 So.2d 625.
For these reasons the judgment appealed from is reversed. It is now ordered, adjudged and decreed that this case be and it is hereby remanded to the Civil District Court for the Parish of Orleans with instructions that said Court order the issuance of a writ of preliminary injunction upon plaintiff giving bond with good security in the amount to be fixed by said Court, all as prayed for and according to law. The defendant shall pay the costs of this proceeding.
Reversed and remanded with instructions.