434 So.2d 633 (1983)
Jacob P. BORDELON, Plaintiff-Appellant,
v.
George Cyrus BORDELON, Defendant-Appellee.
No. 83-127.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*634 Harold J. Brouillette, Marksville, for plaintiff-appellant.
William J. Bennett, Darrel Ryland, Marksville, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
YELVERTON, Judge.
Jacob Bordelon brought suit to get a declaration of his rights under an assignment of a surface lease as against George Bordelon, the current owner of the land. The defendant reconvened asking the court to declare the lease null and void. From a judgment declaring the plaintiff's lease null and void, the plaintiff has appealed. We reverse and render judgment declaring the lease valid and binding on defendant.
Facts
The facts in this case are undisputed. The property involved is a small tract of land in Bordelonville, Avoyelles Parish. There are nine recorded documents through which plaintiff traces his lease. These transactions, spanning 30 years, are complicated largely because most of the parties to the documents are related and many have the same last names. For the convenience of the reader these nine transactions are listed and numbered below in chronological order and will sometimes be referred to by number in this opinion.
1. On January 21, 1950, Levi Bordelon, George Bordelon's ancestor in title to the property, executed a lease in favor of George Laborde. The term of the lease was 99 years and required an annual rental of $25 payable in advance. This lease contained a clause which prohibited an assignment of the lease in whole or in part by the lessee.
2. On March 21, 1950, George Laborde assigned the lease to C.R. Laborde. In this document Levi Bordelon appeared and agreed to strike the clause in the prior lease which prohibited assignment and to substitute a new clause which allowed the lease to be assigned in whole or in part.
3. On October 27, 1952, C.R. Laborde executed an act of sale of the store building on the property and its stock to George Laborde. This instrument by its terms also included an assignment of the lease "only insofar as the above lease affects the land upon which the above described building rests."
4. On October 22, 1962, C.R. Laborde transferred his rights under the lease covering the entire tract to George Laborde. This instrument contained a clause prohibiting the assignment of the lease in whole or in part. (Although this conveyance appears to have been intended as an assignment, it can only be regarded as a sublease in view of the interdiction of the right of George Laborde to assign.)
5. The following day, October 23, 1962, George Laborde assigned the lease he received in transaction # 4 to Lester and Marie Bordelon. Included in this transaction was the sale of the building and stock located on the property.
6. On May 6, 1963, Lester and Marie Bordelon entered into a community property settlement agreement whereby Marie Bordelon acquired the lease.
7. On January 28, 1972, Marie Bordelon assigned the lease to Mark and Elizabeth Staires for $300 and the assumption of the annual rental obligation of $25.
8. Jacob Bordelon acquired the lease by assignment from Mark and Elizabeth Staires for $1,000 and the assumption of the annual rental. This document was filed for record on February 9, 1973.
*635 We interrupt the listing of the transactions to point out that it was here in the sequence of events that Jacob Bordelon filed suit on July 21, 1982, seeking a declaration of his rights against George Bordelon. He sued because George had been refusing for years to accept the rent payments and was contending that the lease was cancelled. The last recorded transaction purporting to affect the lease is transaction # 9.
9. On August 31, 1982, George Laborde and the heirs of C.R. Laborde (Oleta Laborde and Clifton Laborde) entered into an "Agreement to Cancel" the 1962 lease between C.R. and George Laborde.
The Positions of the Parties
Jacob Bordelon's suit asked for a determination of his rights as assignee of the Staires (transaction # 8). The defendant, George Bordelon, is the record owner of the property who traces his ownership by inheritance direct from Levi Bordelon, the original owner-lessor. The petition alleged that all provisions of the original 1950 lease have been complied with by the subsequent lessees and sublessees and that all rentals have been paid and accepted up to the payment due on January 21, 1974. The petition further alleged that for each of the years 1974 through 1982 plaintiff tendered rental checks to the defendant, but that each tender was refused and the checks returned. With the filing of his petition plaintiff paid the amount of $225 (rent for nine years) into the registry of court and prayed to have the lease declared valid and binding upon the defendant.
George Bordelon answered the suit and denied tender thus putting at issue the timely payment or tender of the rent. He also filed a reconventional demand seeking a declaration that the lease is null and void on the further ground that the 1962 lease from C.R. Laborde to George Laborde (transaction # 4) contained a prohibition against further assignment, and that the lease was further assigned (transaction # 5, et seq) in contravention of that prohibition.
What the Trial Court Did
Following trial on the merits the district court rendered judgment in favor of George Bordelon, owner of the property. The trial court found that the assignment by George Laborde to Lester and Marie Bordelon (transaction # 5) was in violation of the prohibitory clause in the 1962 lease (transaction # 4) and therefore that assignment and all subsequent assignments were invalid. Resolving the case on the reconventional demand, the trial court did not reach the issue of whether the rent was timely paid.
The Two Issues on Appeal
There are two issues on appeal. The first is whether George Bordelon possesses the right to assert that the prohibition in the 1962 lease between C.R. Laborde and George Laborde (transaction # 4) was violated by the subsequent assignment from George Laborde to Lester and Marie Bordelon (transaction # 5). The second is whether Jacob Bordelon timely tendered the 1974 rental; in other words, has he complied with his rent obligations under the lease?
Resolution of First Issue: Who can Enforce the Prohibition Against Assignment?
We disagree with the trial court. We hold that George Bordelon cannot assert that the 1962 lease provision prohibiting assignment was violated thereby warranting cancellation of the lease and subsequent assignments. The reason for this is that George Bordelon was not the lessor in the 1962 lease and has not acquired the rights of the lessor therein, C.R. Laborde, by assignment, inheritance or otherwise.
We remind the reader that George Bordelon as owner of this property derives ownership by inheritance straight from Levi Bordelon, the original owner-lessor. Levi, although he originally expressly interdicted assignment by his lessee, before his death removed that interdiction and expressly authorized assignment in whole or in part by his lessee.
*636 Under La.Civil Code art. 2725 a lessor may interdict the right of the lessee to assign the whole or a part of the lease and the interdiction is strictly construed against the lessee. Thriftee Oil Co. v. Partin, 209 So.2d 557 (La.App. 2nd Cir.1968), writ denied, 252 La. 255, 210 So.2d 504 (La.1968). This interdiction, however, is for the benefit of the lessor, who alone may take advantage of it. Capri Operating Corporation v. Bluestone, 217 So.2d 770 (La.App. 4th Cir. 1969); LaMarca v. Valenti, 217 So.2d 718 (La.App. 4th Cir.1969), writ denied, 253 La. 879, 220 So.2d 460 (La.1969); see also The Louisiana Law of Lease, 39 Tu.L.Rev. 798, 869-871 (1965). The only exception to the rule that the lessor alone may take advantage of the interdiction exists when the lessor himself conveys the right to enforce the provision, as when he sells the property without reserving the right. Cordeviolle v. Redon, 4 La.Ann. 40 (La.1849).
In the present case the defendant is attempting to enforce the prohibitory clause in the 1962 lease between C.R. Laborde and George Laborde (transaction # 4). The 1962 lease between C.R. Laborde and George Laborde is not an assignment but is in reality a sublease by C.R. Laborde of the 1952 lease obtained from Levi Bordelon. The distinction between an assignment and a sublease is that in an assignment the original lessee transfers all of his rights in the lease, whereas in a sublease he retains some control or interest in the lease. Smith v. Sun Oil Co., 165 La. 907, 116 So. 379 (La.1928); J. F. Auderer Laboratories v. Deas, 223 La. 923, 67 So.2d 179 (La.1953); Estate of Whitley v. Anning, 392 So.2d 799 (La.App. 3rd Cir.1980). C.R. Laborde, as lessee of Levi Bordelon, possessed the unlimited right of assignment or sublease. He did not pass the right on to George Laborde but, instead, expressly prohibited further assignment in whole or in part. Thus he retained some interest or control in the lease and it was a sublease. The reservation of the right to prohibit further assignment is for the benefit of the sublessor, C.R. Laborde, alone and may now be asserted only by his heirs or by the assignee of his rights.
The evidence suggests that Oleta and Clifton Laborde are the heirs of C.R. Laborde. They are not parties to this suit. There is no evidence in the record to show an assignment of C.R. Laborde's rights under the 1962 lease or that his heirs have filed suit to cancel the 1962 lease.
We can give no effect in the instant proceedings to the "Cancellation of Lease" (transaction # 9) signed by the heirs of C.R. Laborde and George Laborde in 1982 and purporting to cancel the lease made 20 years earlier. This instrument was obviously confected as an effort to break the chain of conveyances and give defendant a legal advantage after this suit was filed. It fails to produce this result because it amounts to no more than a unilateral declaration by C.R. Laborde's heirs who are not parties to this suit. George Laborde could not cancel the lease; he possessed no rights to cancel; what rights he once possessed were totally assigned by him to Lester and Marie Bordelon (transaction # 5). Insofar as the right to assert interdiction against assignment imposed by C.R. Laborde is concerned, the "Cancellation of Lease" changes nothing: C.R. Laborde possessed the right after he made the 1962 lease and, unless there has been a waiver of the right to assert the interdiction, his heirs possess it still.[1]
Since George Bordelon is not the heir of C.R. Laborde, and has produced no evidence that he is an assignee of C.R. Laborde and his heirs, he may not assert *637 that the interdiction has been breached thereby warranting cancellation of the lease. For these reasons we conclude the trial court erred in finding that the assignment of George Laborde to Lester and Marie Bordelon (transaction # 5) and all further assignments were in violation of the prohibitory clause contained in transaction # 4.
Resolution of Second Issue: Has Jacob Bordelon Complied With his Rent Obligation?
The trial court did not reach the issue of whether plaintiff timely tendered the 1974 annual rental to George Bordelon and, consequently, whether there should be a declaratory judgment decreeing that plaintiff has complied with the conditions of the lease relative to rent. It is noted that compliance with the timely payment of rent requirements was an issue raised by plaintiff in his pleadings and denied by defendant, and it is therefore an issue before us.
With regard to this issue the testimony at trial revealed the following undisputed facts: George Bordelon timely received rental payments under the lease through 1973. When they had the lease Lester and Marie Bordelon sent their annual rental checks to George Bordelon at his residence in North Carolina. Mark Staires sent the 1973 rental payment to the defendant's then residence in Oklahoma. The defendant testified that his job required him to move frequently. When Mark Staires assigned the lease to Jacob Bordelon in early 1973 the rent for that year was already paid. As the due date for 1974 approached the plaintiff unsuccessfully tried to locate the defendant, then timely sent the rental check to Mark Staires, who returned it. After further inquiries the plaintiff finally learned that the defendant had moved to Sterlington, Louisiana, and forwarded the 1974 rental check to the defendant in February 1974. The defendant refused to cash the check and returned it to the plaintiff with a letter informing him that the rent was untimely and that the lease was therefore cancelled. The plaintiff has timely sent each subsequent annual rental check to the defendant since 1974; all checks were refused and returned by the defendant.
Although a lessor may ordinarily dissolve a lease for failure of a lessee to pay rentals timely, this right is subject to judicial control according to the circumstances. Atkinson v. Richeson, 393 So.2d 801 (La. App. 2nd Cir.1981).
The court in Baham v. Faust, 333 So.2d 261 (La.App. 1st Cir.1976) was confronted with a similar situation. In that case the rent was not received until eight days after it was due. The lessor refused the check at that time. The appellate court noted that dissolution of a lease is subject to judicial control according to the circumstances and determined that since there was no place of payment noted in the lease and no custom of payment at a particular location, the lessor was required to collect the rent at the lessee's dwelling under the provisions of La.Civil Code art. 2157. Since there was evidence of the lessee's willingness to pay, the court concluded the lessor cannot create a cause of action by not collecting the rent. Judicial control was therefore exercised to prevent cancellation of the lease for non-payment of the rent.
In the present case none of the transactions noted a place of payment and there was no evidence of a custom of payment. The evidence revealed the contrary; defendant testified he had received payment in Oklahoma, North Carolina and Louisiana. Since no place of payment was established the defendant-lessor was therefore required to collect the rent at his lessee's dwelling. Civil Code art. 2157. Since there was ample evidence to show a willingness to pay by the plaintiff, the lease cannot be cancelled on the ground of non-payment of rent.

CONCLUSION
For the reasons assigned the judgment of the trial court is reversed, and judgment is hereby rendered in favor of the plaintiff, Jacob Bordelon, against the defendant, George Bordelon, declaring that the rights acquired by Jacob Bordelon under the instrument *638 dated January 21, 1972, from Mark Staires, et al, designated "Sale and Assignment of Surface Lease", are in full force and effect and George Bordelon is bound thereby. Appellee, George Bordelon, is to pay all costs of these proceedings in the district court and on appeal.
REVERSED and RENDERED.
NOTES
[1] The evidence suggests that C.R. Laborde knew and consented to the assignment of the lease by George Laborde to Lester and Marie Bordelon, thereby waiving his right to assert that the prohibitory clause had been violated. See Blanchard v. Shrimp Boats of Louisiana, Inc., 305 So.2d 748 (La.App. 4th Cir. 1974). The waiver of consent to the first assignment may obviate the necessity of consent to subsequent assignments. See 31 A.L.R. 153. However, since the heirs of C.R. Laborde were not made parties to this suit, we decline to determine the issue of whether or not C.R. Laborde or his heirs waived their right to assert that the 1962 lease had been violated.