457 So.2d 231 (1984)
BOURGEOIS, DUPUIS, WRIGHT & COHEN, Certified Public Accountants, Plaintiffs-Appellants,
v.
James A. HAYES, Steven G. Durio, Oliver Richard, III, and 315 Office Ltd., Defendants-Appellees.
No. 83-838.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
Writ Denied December 7, 1984.
*232 Dupuis, Mayers & Harson, Michael Harson, Lafayette, for plaintiffs-appellants.
Hayes, Durio & McGoffin, Gary McGoffin, Lafayette, for defendants-appellees.
Before DOMENGEAUX, CUTRER and DOUCET, JJ.
CUTRER, Judge.
This appeal arises out of a suit for the breach of a sublease.[1]
Bourgeois, Dupuis, Wright and Cohen, sublessors, filed suit against Hayes, Durio and Richard, sublessees, seeking an acceleration of the terms of the sublease of office space, on the ground that defendants breached their obligations by failing to pay the rent due under the terms of the sublease. Defendants answered seeking a dismissal of the suit on the ground that plaintiffs had breached the terms of the sublease by refusing to allow defendants to make certain alterations in the office space as agreed upon in the sublease. Plaintiffs amended their petition by adding, as a defendant, 315 Office Ltd. (315), the original lessor, seeking judgment against 315 to cancel the original lease between plaintiffs and 315 in the event defendants were successful in asserting their defense and obtaining judgment cancelling the sublease.[2]
From a trial court judgment dismissing their suit, plaintiffs appeal. We affirm.

FACTS
On August 29, 1980, plaintiffs leased 5,754 square feet of office space from 315 located in a building owned by 315 at 315 *233 South College Road in Lafayette, Louisiana. The primary term of the lease was for five years with an option to renew the lease for an additional five-year term. The lease contained a provision that plaintiffs could only sublease or assign the lease if the written permission of 315 was obtained. This lease was silent as to plaintiffs' right to make alterations of the premises.
In the latter part of 1981, the plaintiffs began negotiations with defendants for the subleasing of the 5,754 square feet of office space. James Dupuis, managing partner of plaintiffs, Tony Fazzio, and Stephen Durio, members of defendants' law firm, represented the respective parties in those negotiations.
It is undisputed that, in the course of the negotiations, Durio and/or Fazzio informed Dupuis that the law firm did not have need for all the space, therefore, it would be necessary that the sublease contain a provision that would allow subleasing and alterations by defendants. Durio testified that Dupuis told him that he (Dupuis) did not expect any difficulty in getting permission from 315 for him to allow defendants to sublease or for him to obtain consent for alterations.
Dupuis admitted that Durio informed him of the necessity of the clause providing for the authority of defendants to sublease and make alterations. Dupuis was agreeable to such a provision. As a result such a provision was inserted into the sublease. This instrument was prepared by the attorney for the plaintiffs. The sublease contained a provision allowing defendants to sublease and to make alterations in the premises upon giving proper notice and obtaining the written consent of plaintiffs.
Pursuant to the terms of the lease between plaintiffs and 315, Dupuis received permission from 315 to sublease the property to defendants. This letter of permission, dated November 10, 1981, made no mention of any alterations to be made by defendants.
The sublease in question was executed by plaintiffs and defendants on January 15, 1982. The defendants occupied a portion of the premises. A short time later, defendants began negotiations with Exploration of Louisiana, Inc., for the sublease of approximately 1,700 square feet of the office space. Exploration informed defendants that it would be necessary that the defendants make some alterations before they would sublease the space. These alterations consisted of the closing of one door, installing four doors, one window and a partition.
Dupuis was notified by defendants of the need for alterations and he contacted Paul Kratzer, a representative of 315, seeking the permission of 315 to allow the proposed alterations.[3] This request by Dupuis was refused. Dupuis then informed defendants that he would not grant permission for defendants to make the alterations. The sublease to Exploration was not confected. On or about September 1, 1982, defendants vacated the premises and ceased making rental payments. This suit followed.
The trial court found that plaintiffs had breached the contract by refusing to grant permission for the alterations and dismissed the suit. The issue presented is whether the trial court was in error in its ruling.
At the outset, we feel that we should clarify the question of whether the instrument is a sublease or an assignment of the lease. The record reflects references to the instrument in some places as an assignment and in other places as it is referred to as a sublease. We have examined the instrument and have determined that the instrument is a sublease and is not an assignment.
"The distinction between an assignment and a sublease is that in an assignment the original lessee transfers all of his rights in the lease, whereas in a sublease he retains some control or *234 interest in the lease....." (Emphasis ours.)
Bordelon v. Bordelon, 434 So.2d 633 (La. App. 3rd Cir.1983).
Dupuis, manager for plaintiffs, testified that defendants paid the monthly rental payments to plaintiffs and they, in turn, would pay 315. Dupuis stated that the monthly payments made by defendants were $.50 per square foot higher than the payments made to 315 by plaintiffs. Further, the primary term of the original lease to plaintiffs was five years with a five-year option, while the primary term granted to the defendants was one year with six two-month options. Since the term granted to defendants was shorter than the term of the original lease to plaintiffs, the lease interest in the premises would revert to the plaintiffs at the expiration of defendants' term. The instrument between the plaintiffs and defendants contained a provision recognizing the fact that a reversion would take place and set out the responsibility of the defendants when the expiration of the term took place.
These facts clearly show that plaintiff retained an interest in the lease thus it was a sublease and was not an assignment. Having concluded that the instrument was a sublease, we now shall proceed with the disposition of the issue of the case; i.e., whether plaintiffs have breached their obligation under the sublease to defendants.
The legal principles applicable to this issue are derived from the law of lease and obligations.
When parties enter into a sublease, a new contract comes into existence which is separate and distinct from the original lease between the owner and the sublessor. The rights and obligations of the sublessor and sublessee arise out of the provisions of the sublease. There is no privity of contract between the sublessee and the original owner-lessor. When a dispute arises between the sublessee and sublessor regarding a breach of the sublease, the court looks to the terms of the sublease in order to determine the respective rights of the sublessee and sublessor. Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33 (La.1908); Ducote v. Callico, 307 So.2d 644 (La.App. 4th Cir.1974), writ den., 309 So.2d 337 (La.1974).
As we examine the sublease we find provisions wherein plaintiffs agreed that defendants could sublease the premises or any part thereof upon obtaining written consent from the plaintiffs. Plaintiffs agreed that such consent would not be unreasonably withheld. Also, plaintiffs specifically agreed to allow defendants to make any alterations, additions and/or improvements within the leased premises after obtaining the written consent of plaintiffs. The plaintiffs also agreed that such consent would not be unreasonably withheld.
James Dupuis, the managing partner for the plaintiffs, testified that, during the negotiations, he was informed that it was important and necessary that defendants have the right to sublease and/or make reasonable alterations to the premises. Dupuis knew that defendants would not have need for the entire floor space and that the defendants planned to sublease a portion of the space to other parties. Dupuis was aware of the fact that he needed to get the consent of 315 before alterations could be made by defendants.
Dupuis, before executing the sublease, obtained written permission from 315 to allow him to sublease the premises to defendants. He failed, however, to get consent from 315 that would allow him to grant the defendants the right to make alterations. Notwithstanding the lack of consent from 315 for alterations, plaintiffs agreed to the alterations clause that was inserted into the sublease.
When defendants requested permission for the alterations in order to sublease, Dupuis then attempted to get the consent of 315, but to no avail. Dupuis then notified defendants that he would not give alteration consent, the reason being that he was unable to obtain the consent of 315. There is no contention that the proposed alterations were unreasonable.
*235 The plaintiff counsel contends that the defendants, being a partnership composed of attorneys who negotiated the sublease, "was in as good a position [as was plaintiff] to have required some intervention by 315 in the said sublease agreement if for no other purpose than to guarantee that they [315] would authorize alterations to be suggested at a later date....." Plaintiffs then argue that defendants cannot complain that plaintiffs breached the sublease. We disagree.
As we have previously pointed out, the sublease between plaintiffs and defendants is a separate contract from the original lease. The defendants were under no obligation to negotiate with the original lessor, 315, in order to confect the sublease. The plaintiffs, before agreeing to the alteration clause, had a duty to ascertain whether the consent by 315 could be obtained in order that they could fulfill their obligation to consent to reasonable alterations. This consent from 315 plaintiffs neglected to get. The result was that plaintiffs agreed to an obligation that it was not free to perform. When the plaintiffs refused to consent to the alterations as requested, this refusal amounted to a breach of the sublease. As stated in Fontenot v. Benoit, 128 So.2d 815 (La.App. 3rd Cir.1961):
"Article 2729 of our LSA-Civil Code provides that `the neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease * * `. Article 2692 provides that the lessor is under an obligation to maintain the lessee in peaceable possession of the leased premises....."
Civil Code art. 2729 gives both parties the reciprocal right to cancel or terminate the sublease if either violates the terms of the agreement. We find that plaintiffs violated the sublease by refusing to allow the defendants to make the requested alterations, thus, defendants had the right to terminate the lease. The trial court correctly dismissed plaintiffs' suit.
For these reasons, the judgment of the trial court is affirmed. Plaintiffs-appellants are to pay the costs of this appeal.
AFFIRMED.
NOTES
[1] We refer to this instrument as a sublease. There seems to be some question among the parties as to whether it was an assignment or a sublease. We shall clarify this question later in this opinion.
[2] The action by plaintiffs against 315 was settled while the appeal was pending. That portion of the suit has been dismissed. Thus, we shall confine our opinion to the issues arising out of the sublease between plaintiffs and defendants.
[3] There is no issue being made as to defendants' subleasing to Exploration. The issue herein concerns alterations.